# ST. LOUIS DRESSED BEEF AND PROVISION COMPANY *v.* MARYLAND CASUALTY COMPANY.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 197. Argued March 7, 1906.—Decided March 19, 1906.

An insurance company issued its policy insuring the assured against statutory and common-law liability for damages caused by negligence of insured or its employés, the insured to give immediate notice of any accident to the company, which agreed to defend any suit for damages brought against the assured, the latter not to make any settlement without the company's consent, and not to bring any action under the policy except for loss actually paid in satisfaction of judgment after trial. After an accident of which notice was duly given the assured was sued and the company refused to defend on the ground that the accident was not within the risks assumed. The assured to avoid heavy judgments settled the suits out of court and sued the company. *Held,* that:

The refusal of the company to defend the suits constituted such a breach of the contract that it released the assured from the agreement not to settle the claim without its consent and amounted to a waiver of the condition that it was only liable for judgment rendered against the assured after trial and satisfied.

Under the circumstances of this case the liability of the assured to the person injured and the extent of the liability may be litigated in the first instance in the action brought by the assured against the company on the policy.

THIS case was brought here on the following certificate:

"The judgment which the writ of error challenges sustained a demurrer to the petition and dismissed the action. The plaintiff in its petition alleged the existence of these facts: The plaintiff is a corporation of the State of Missouri, and the defendant is a corporation of the State of Maryland. On June 16, 1900, the defendant in consideration of the payment of $168 issued to the plaintiff a policy which contained these provisions: 'In consideration of the application for this policy, a copy of which is hereto attached and which is made part

of this contract, and of one hundred sixty-eight dollars ($168) premium, Maryland Casualty Company, of Baltimore, Maryland (hereinafter called "the company"), does hereby agree to indemnify St. Louis Dressed Beef & Provision Co. of St. Louis, county of ——, State of Missouri, hereinafter called "the assured" for the term of one year beginning on the fifth day of July, 1900, at noon, and ending on the fifth day of July, 1901, at noon, standard time, at the place where this policy has been countersigned, against loss from common law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered by any person or persons, and caused through the negligence of the assured, by means of the horses or vehicles in his services, and the use thereof, as described in the application and while in the charge of the assured or his employés. Provided, however, that:

"'A. The company's liability for an accident resulting in injuries to, or in the death of one person is limited to five thousand dollars ($5,000) and subject to the same limit for each person; the total liability for any one accident resulting in injuries to, or in the death of any number of persons is limited to ten thousand dollars ($10,000).

"'This insurance is subject to the following conditions, which are to be construed as conditions precedent of this contract:

"'1. The assured, upon the occurrence of an accident, shall give immediate notice thereof in writing, with full particulars to the home office of any claim which may be made on account of such accident.

"'2. If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company, and the company will defend against such proceeding, in the name and on behalf of the assured, or settle the same at its own cost, unless it shall elect to pay the assured the indemnity provided for in clause "A" of special agreements as limited therein.

" '3. The assured shall not settle any claim, except at his own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding, without the consent of the company previously given in writing, but he may provide at the time of the accident such immediate surgical relief as is imperative. The assured when requested by the company shall aid in securing information and evidence and in effecting settlements, and in case the company calls for the attendance of any employé or employés as witnesses at inquests and in suits, the assured will secure his or their attendance, making no charge for his or their loss of time.

" '8. No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue. No such action shall lie unless brought within the period within which a claimant might sue the assured for damages unless at the expiry of such period there is such an action pending against the assured, in which case an action may be brought against the company by the assured within thirty days after final judgment has been rendered and satisfied as above. In no case except that of minors shall any action lie against the company after the expiration of six years from the date of the given injuries or death. The company does not prejudice by this clause any defenses to such action which it may be entitled to make under this policy.

" 'This policy shall only cover losses sustained by and liability for any claims against the assured as a result of the risk specified in the contract or contracts hereto attached, and is issued and accepted upon the condition that all the provisions printed on the slip or slips attached to this policy are accepted and shall be fulfilled by the assured as part of this contract as fully as if they were recited at length over the signatures hereto affixed.'

"The portion of the policy hereinbefore quoted commencing with the words 'against loss from common law or statutory

liability' and ending with the words 'entitled to make under this policy.' at the close of paragraph numbered 8, were printed on the slip attached to the policy.

"On May 25, 1901, the plaintiff became liable for damages on account of bodily injuries accidentally suffered by Mrs. Nellie Heideman and caused through the negligence of the plaintiff by means of a horse and vehicle in its service and the use thereof as described in the application for the policy and while in charge of one John Berry, who was one of the plaintiff's employés. The plaintiff immediately gave the defendant notice of the accident and of the fact that Nellie Heideman made a claim against the plaintiff for damages on account of the bodily injuries she had suffered from the accident and that Henry Heideman, her husband, also made a claim for damages against it on account of the loss of the services of his wife and of the expenses of physicians and nurses which resulted to him from her bodily injuries. On August 16, 1901, the defendant notified the plaintiff that it denied that it was liable to it on account of the damages resulting from the accident under its policy because, as it alleged, the driver of the plaintiff's wagon was not an employé of the plaintiff, but the fact was that this driver was an employé of the plaintiff and the accident and the damages were covered by the policy. On November 23, 1901, Nellie Heideman sued the plaintiff for $10,000 damages on account of the bodily injuries to her caused by the negligence of the plaintiff's driver and by the accident, and Henry Heideman brought an action against it for $3,000 damages which he alleged he sustained from the same cause. On November 29, 1901, the plaintiff in writing notified the defendant of the commencement of these suits and requested it to undertake the defense of said suits as its said policy provides it would do. But the defendant declined to undertake the defense upon the alleged ground that its policy did not cover the accident or the claims, while the fact was that it covered both. The injuries to Mrs. Heideman were, among others, the breaking of her right hipjoint socket bone, were serious and permanent and

the plaintiff was liable for damages in each of the suits. It feared heavy judgments if the actions were permitted to proceed to trial. Thereupon, on April 15, 1902, it compromised the suits and paid Mrs. Heideman $2,000 damages and her husband $500 damages on account of the injuries caused by the accident and the negligence of its driver.

"The petition also contained the following averments: 'The plaintiff served on defendant a written notice notifying it of the terms of settlement offered by said Nellie Heideman and Henry Heideman for the injuries sustained and damages suffered by them respectively, as aforesaid, and that plaintiff proposed to accept said settlements and pay said amounts, and to hold defendant responsible for such payment under its aforesaid policy; that defendant interposed no objection to said proposed settlements, relying upon its disclaimer of any liability under said policy by reason of its alleged claim that the driver of said wagon was not in the employ of the plaintiff herein; and that said defendant by reason of the said denial and disclaimer of any liability waived all the conditions of the said policy as herein set forth. Plaintiff further states that by reason of defendant's failure and refusal to defend said actions brought by Nellie Heideman and Henry Heideman against plaintiff, and by reason of the waiver aforesaid, it was obliged to and did defend said actions and employed counsel for that purpose, at an expense of two hundred and fifty dollars ($250.00), and that said employment of counsel was reasonably necessary, and that said sum of $250.00 is the reasonable value of said services so performed.'

"And the Circuit Court of Appeals for the Eighth Circuit further certifies that the following questions of law are presented by the assignment of errors in this case, that their decision is indispensable to a decision of this case and that to the end that this court may properly decide the issues of law presented it desires the instruction of the Supreme Court of the United States upon the following questions:

"1. Did the denial of all liability by the assurer and its re-

fusal to defend the suits in the name and on behalf of the assured as provided by paragraph 2 of the policy constitute such a breach of the contract on its part that.it released the assured from its agreement in paragraph 3 that it would not settle any claim except at its own cost without the consent of the assurer previously given in writing, and from the provision of paragraph 8 that no action should lie against the assurer as respects any loss unless for loss actually sustained and paid by the assured in satisfaction of a judgment after trial of the issue?

"2. Were the provisions of paragraphs 3 and 8 of the policy that the assured should not settle any claim except at its own cost, without the consent of the assurer, previously given in writing, and that no action should lie against the assurer as respects any loss under the policy unless brought by the assured to reimburse it for loss actually sustained and paid by it in satisfaction of a judgment after trial of the issue, waived by the assurer's denial of liability under the policy and by its failure and refusal to defend the suits against the assured according to the provision in paragraph 2?

"3. Did the compromise by the assured of the suits against it after the assurer denied liability and refused to defend them and the payment by the assured of the damages claimed of it pursuant to the compromise, without the consent of the assurer and without the rendition of a judgment or a trial of the issues, prevent the assured from securing any recovery of the assurer upon the policy on account of the negligence, accident and injuries described?

"4. Considering the terms of the policy, is the right of the assurer to insist upon the condition of paragraph 8 respecting the rendition of judgment after trial and its satisfaction by the assured dependent upon the assurer's defense of the action against the assured according to the provision in paragraph 2?

"5. Considering the terms of the policy, is the assurer's denial of liability under the policy a waiver of the condition in paragraph 8 respecting the rendition of judgment after trial and its satisfaction by the assured?

"6. Under the terms of the policy may the liability of the assured to the injured person and the extent of that liability be litigated in the first instance in an action between the assured and the assurer where the assurer has denied its liability under the policy and has refused to defend an action brought against the assured by the injured person?"

*Mr. Ford W. Thompson* with whom *Mr. William B. Thompson* and *Mr. Ralph Crews* were on the brief, for St. Louis Beef Co.

This question of the difference between contracts of indemnity against loss and indemnity against liability for loss, has never been presented to this court for decision. It has, however, been presented to several of the Supreme Courts of the States. See *Fenton* v. *Fidelity & Casualty Company*, 36 Oregon, 283; *Hoven* v. *Lake Superior Iron Co.*, 93 Wisconsin, 201.

The fact that $3,000 has been paid to compromise the loss does not fix the amount; it establishes the fact that all the loss which the complainant was liable for, or has sustained, has been paid. A judgment against an indemnitee, after notice to the insurer to defend suit, is conclusive of the amount and liability. 16 Am. & Eng. Ency. of Law, 180, note 4, and cases cited; *Showers* v. *Wadsworth*, 81 California, 270.

Such a judgment, without any notice to an indemnitor, is presumptive evidence of liability and its amount only. 16 Am. & Eng. Ency. of Law, 180, note 5; *Kansas City &c. R. Co.* v. *Southern Ry. News*, 151 Missouri, 373, 391; *Laing* v. *Hanson* (Texas), 36 S. W. Rep. 116, 118.

The provision for the judgment and its payment is of the same nature and effect as the provision in fire insurance policies for a determination of amount and liability by arbitration, and that such arbitration "shall be a condition precedent to any right of action in law or in equity to recover for such loss." Such contracts are valid and binding as long as the indemnitor proceeds in accordance with them, and does not deny its liability. *Hamilton* v. *Ins. Co.*, 136 U. S. 242, 252.

But they are ineffective and are waived when the insurer

denies all liability. *Weiner* v. *Fire Ins. Co.*, 153 Massachusetts, 235, 238; *Savage* v. *Phœnix Ins. Co.*, 12 Montana, 458; *Pensel* v. *Home Ins. Co.*, 3 Washington, 485.

The provisions of this contract are nothing more than a method of proof which is waived when the company denies its liability and refuses to follow that method. *Ross* v. *American &c. Ins. Co.*, 56 N. J. Eq. 55; *Southern Ry. News Co.* v. *Fidelity & Casualty Co.*, 83 S. W. Rep. (Ky.) 620. See also *Taylor* v. *Insurance Co.*, 9 How. 390; 4 Joyce on Insurance, § 3211; *Knickerbocker Ins. Co.* v. *Pendleton*, 112 U. S. 696; *Bailey* v. *Ætna Ins. Co.*, 46 N. W. Rep. (Wis.) 440; Beach on Insurance, § 1244.

*Mr. Frank Gosnell* and *Mr. Geo. Weems Williams* for the Casualty Co.:

The company agreed to indemnify the insured against loss from common law or statutory liability only. There is a clear distinction between a contract against "liability for damages" and a contract of indemnity against "loss from liability for damages." Under the latter clause no liability arises until payment by the assured of a judgment after a trial. *Gilbert* v. *Wiman*, 1 N. Y. 550; *Frye* v. *Bath Gas Co.*, 97 Maine, 241; *Moses* v. *Travellers Ins. Co.*, 63 N. J. Eq. 260; *Finby* v. *United States Casualty Co.*, 83 S. W. Rep. 2; *Cushman* v. *Fuel Co.*, 122 Iowa, 656; *Connolly* v. *Bolster*, 72 N. E. Rep. (Mass.) 981; *O'Connell* v. *N. Y., N. H. & H. R. R.*, 187 Massachusetts, 272. *Sanders* v. *Frankfort Ins. Co.*, 72 N. H. 465, distinguished.

MR. JUSTICE HOLMES, after making the foregoing statement, delivered the opinion of the court.

An elementary remark or two will do something toward answering these questions. The form of the declaration does not appear, but we may suppose a count upon the Casualty Company's refusal to defend the suit against the plaintiff. If the defendant's contention is right, that breach made it impossible for the plaintiff to entitle itself to the payment promised in the policy according to its terms. But the defendant could not set

itself free by so simple a device.  In general, when one party by his fault prevents the other party to a contract from entitling himself to a benefit under it according to its terms, the former is liable for the value of that benefit less the value or cost of what the plaintiff would have had to do to get it.  In this case the plaintiff had nothing more to do or to pay after it had been compelled to satisfy the claim against it.  And therefore, on general principles, it would be entitled to demand the whole amount which the jury might find that it would have received had the contract been performed.  *Hinckley* v. *Pittsburg Bessemer Steel Co.*, 121 U. S. 264.

It is suggested, to be sure, that the plaintiff should have defended the suit against it.  But not only was that not one of the plaintiff's undertakings, but it was expressly forbidden to the plaintiff by the contract, as no doubt the defendant would have pointed out had that course been taken.  Moreover, the defendant, by its refusal, cut at the very root of the mutual obligation and put an end to its right to demand further compliance with the supposed term of the contract on the other side.  The only concern of the plaintiff was to establish reasonable ground for believing that if the defendant had not broken its contract it would have been called on to make a payment to the plaintiff, and how much that payment would have been.

Looking at the substance of the matter, it makes no practical difference, no difference in the amount of the defendant's liability, whether we say that the defendant by its conduct made performance of the conditions by the plaintiff impossible, and therefore was chargeable for the sum which it would have had to pay if those conditions had been performed, or answer, in the language of the questions, that performance of the conditions was waived.  The sole difference would be in the form of the declaration.  In either case the plaintiff would declare upon the policy, only the breaches assigned would not be the same.  In the former the breach would be the refusal to defend, in the latter the refusal to pay.  If it is necessary to con-

sider the question in a technical aspect, we think that the plaintiff was entitled to treat the contract as on foot, notwithstanding the defendant's act, and go on with it *cypres.* Under the circumstances it could not comply literally with the words, and was justified in doing the best thing that could be done for the interest of both. The defendant by its abdication put the plaintiff in its place with all its rights. To limit its liability as if its only promise was to pay a loss paid upon a judgment is to neglect the meaning and purpose of the reference to a judgment, and even the words of the promise. The promise in form is to indemnify against loss by certain kinds of liability. The judgment contemplated in the condition is a judgment in a suit defended by the defendant in case it elects not to settle. The substance of the promise is to pay a loss which the plaintiff shall have been compelled to pay, after such precautions and with such safeguards as the defendant may insist upon. It saw fit to insist upon none.

We assume that the settlement was reasonable, and that the plaintiff could not expect to escape at less cost by defending the suits. If this were otherwise no doubt the defendant would profit by the fact. The defendant did not agree to repay a gratuity, or more than fairly could be said to have been paid upon compulsion. But a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution.

But there is another aspect of the eighth condition of the slip which requires a few words more. It is said that this condition expressly contemplates a breach of contract by the company and defines the plaintiff's rights in that case. The words "no action shall lie against the company as respects any loss under this policy unless," etc., certainly do contemplate a case in court in which the company may turn out to be in the wrong, and therefore technically guilty of a breach of contract. But notwithstanding the contrary suggestion in *Sanders* v. *Frankfort Marine, Accident & Plate Glass Ins. Co.*, 72 N. H. 485, 498, 499, we think that the only breach which that condition has

in view is a refusal by the company to pay after the decision in a case of which it has taken charge, when, notwithstanding the judgment, it conceives itself to have a defense. The action referred to is an action for money alleged to be due under the policy. Contracts rarely provide in detail for their nonperformance. It would be stretching the words quoted to a significance equally hurtful to both parties, and probably equally absent from the minds of both, to read them as having within their scope an initial repudiation of liability by the defendant and a requirement that in that event the plaintiff should be bound to try the case against itself, although it should be plain that by a compromise it could reduce its claim on the defendant as well as its own loss.

If there is anything in the doubt whether the defendant, by assuming the defense of the original suit, would not lose its right to deny that the policy applied, even if it purported to save that right, it does not change our opinion. The requirement of a trial and judgment would not accomplish the object suggested, to make collusion impossible. The objections to thus hampering the *dominus litis* have been touched upon, and there would be presented the anomaly, if not the monstrosity, of a party attempting to provide by contract that if he should do what by general principles of contract forfeited his right to make further requirements of the other side, his conduct, on the contrary, should impose new obligations on the other side. If the defendant kept its contract, it would defend the suit, and the plaintiff would have no duties. If it refused to do as it had promised, we cannot think that it was entitled to complain that the plaintiff did not do it when the interest of both was the other way. Before a policy should be construed to have such an extraordinary effect honesty requires that the assured should be notified of his duties in unmistakable words.

We answer the first, second, fourth and fifth questions in the affirmative, the third in the negative and the sixth in the affirmative, so far as the question is warranted by the facts set forth.                    *It will be so certified.*