## Epstein v. Erie Indemnity Company, etc.

118

*Charles A. Mertens, Jr.*, and *Pollack & Pollack*, for plaintiff.

*Gunnison, Fish, Gifford & Chapin* and *M. E. Graham*, for defendant.

LARRABEE, P. J., twenty-ninth judicial district, specially presiding, January 10, 1940. — Erie Indemnity Company, a corporation, issued its policy of automobile liability insurance to Israel Epstein, a resident of the City of Erie, Pa. While operating his automobile on August 3, 1934, plaintiff became involved in an accident in Erie County, in which Riva Fisher, a passenger in his car, sustained personal injuries.

Plaintiff had purchased this automobile from the Champion Auto Sales Company, of Erie, which company also

held a liability insurance policy issued by defendant, protecting it against the negligence of its employes in inspecting and repairing cars of its patrons. The day before the accident, plaintiff drove his car to the Champion Auto Sales Company garage to have the brakes attended to and plaintiff testified the garage manager informed him the brakes were in proper working order.

Plaintiff notified defendant of this accident the day it occurred and defendant immediately obtained from plaintiff a written statement as to the circumstances leading up to the accident. In this statement plaintiff represented that the accident happened as he was in the act of trying to pass another car on a curve. Plaintiff also stated, "As far as I know my car was in perfect working order, it having been inspected when I bought it from the Champion Auto Sales". In this written statement plaintiff said nothing about any faulty condition of the brakes on his car.

Under the terms of the policy issued to plaintiff, defendant was liable only for injuries to passengers in plaintiff's car; whereas, under the policy issued by defendant to said Champion Auto Sales Company, if it were shown the brakes on plaintiff's car were defective, they having been inspected the day before by the Champion Auto Sales Company, defendant company would also be liable for damage occurring to Epstein's car, as well as for his personal injuries.

It appears that about three weeks after the accident and without the knowledge of defendant, Epstein, through his attorneys, wrote the Champion Auto Sales Company claiming injuries to himself and damage to his car and alleging the accident was due to faulty brakes on his car resulting from a negligent inspection and repair made by the Champion Company. Upon receiving this letter the Champion Auto Sales Company at once reported the claim to defendant. Defendant then made demand on Epstein that he give a true statement as to the facts leading up to the accident, in order that defendant could determine the

real cause of this accident, and ascertain whether it was the result of plaintiff's conduct in operating his car or was due to faulty brakes.

Epstein did not comply with defendant's request in this matter, and never gave any further statement to defendant as to the cause of the accident, other than the written statement given on the date of the accident.

Riva Fisher, a woman passenger in plaintiff's car, brought an action in trespass against Epstein in the Court of Common Pleas of Cuyahoga County, Ohio, to recover damages for injuries alleged to have been sustained by her, and Epstein was served with a summons while attending a wedding in Cleveland in October 1934. He immediately returned to Erie and showed defendant's officers the papers that had been served on him and notified them of the action brought by Riva Fisher. Epstein was then told by the president of defendant company that defendant would not defend him for the reason that Epstein had failed to give a later written statement, as demanded by defendant, setting forth the true cause of the accident; that is, whether it was due to plaintiff's conduct in operating his car, as stated in his report given on the day of the accident, or to a faulty condition of brakes, as later claimed by Epstein in his demand made on the Champion Auto Sales Company.

Upon the refusal by defendant to defend Epstein in this action he retained a firm of attorneys in Cleveland to represent him, and at the trial a judgment was rendered against him in favor of Riva Fisher in the sum of $12,750. Following this judgment Riva Fisher made demand on defendant for payment of the amount of said judgment to the extent of the liability limit of $5,000 stated in defendant's policy, but defendant refused to pay it. She then instituted an action against defendant in the United States District Court for the Western District of Pennsylvania. The case was tried in Pittsburgh and resulted in a verdict of $5,000 in her favor.

Defendant, in this action brought in the United States district court, defended upon the grounds of Epstein's failure to coöperate in giving information as to the real cause of the accident as required in its policy, as well as a breach of the clause in its policy which required the assured to execute a sworn statement as to the facts. However, defendant finally satisfied this judgment of $5,000, which represented the extent of its contract liability as stated in its policy issued to Epstein.

Epstein then brought this action in trespass against Erie Indemnity Company, in the Court of Common Pleas of Erie County, seeking to recover the amount of the verdict of $12,750 rendered against him and in favor of Riva Fisher, in the court of Cuyahoga County, Ohio, in excess of the $5,000 recovered by her against defendant, in the United States district court. The amount thus claimed by plaintiff as representing the excess of the said judgment over $5,000 is $9,324.78, with interest from July 28, 1939. Plaintiff, in his statement of claim, averred that defendant had acted "in bad faith, maliciously, fraudulently, and intentionally".

The case came on for trial and plaintiff called two witnesses, Samuel Y. Black, secretary of defendant, as on cross-examination, and plaintiff in his own behalf. No other witnesses were called. A signed report by Epstein to defendant's representative made on the day of the accident was introduced in evidence, in which Epstein stated, "As far as I know my car was in perfect working order, it having been inspected when I bought it from Champion Auto Sales".

Plaintiff admitted he had consulted a firm of lawyers three weeks after the accident, and had them present a claim to the Champion Auto Sales Company for injuries to himself and damages to his car, claiming the brakes were defective on the car he had recently purchased from the Champion Auto Sales Company and that its garage manager had reported the brakes were in good condition. In this connection Epstein testified at the trial as follows:

"But when the accident occurred, I felt that maybe it was the brakes, because when I used the brakes it seemed I could not really control the car any more . . . therefore I thought it was the brakes".

However, an inspection of Epstein's signed statement made to defendant on the day of the accident shows that he did not complain of any defect in the brakes of his car. Thus, within a period of three weeks following the accident defendant was confronted with the possibility of a second claim for damages from the same accident, on a wholly different cause, by reason of its liability policy issued to said Champion Auto Sales Company. In this dilemma it became necessary for defendant to be furnished by Epstein with a true statement of the facts leading up to this accident and because of his failure to give such additional statement defendant notified Epstein it refused to defend him in the action brought by Fisher.

On this question of having two prospective claims presented against it for damages arising out of the same accident to the same automobile, Mr. Black, secretary of defendant company, testified that the Insurance Commissioner of Pennsylvania required defendant to show, in its files, a justification for the payment of every claim under any policy issued by it and that an insurance company is required to distinguish between different policies when claims are being paid out of the same accident.

Mr. Black further testified that Epstein in his signed statement given on the day of the accident claimed that an accident arose as he was attempting to pass another car on a curve, and then in a second proposed written statement, which plaintiff never signed, he averred that the condition of the brakes caused his car to run off the road into a ditch.

Mr. Black, secretary of defendant, was called as for cross-examination by plaintiff and, as a party is bound by the uncontradicted testimony of an adverse party called for cross-examination and his testimony remained uncontradicted, it is binding upon plaintiff: Golder v. Bogash

et al., 329 Pa. 350; Krewson, Executrix, v. Sawyer et al.; Execs., 266 Pa. 284; Readshaw et ux. v. Montgomery, etc., 313 Pa. 206.

At the close of the testimony counsel for defendant moved for a compulsory nonsuit and argument was had on the motion. Plaintiff contended that the judgment rendered in favor of Fisher and against defendant in the United States district court rendered the present action res adjudicata, that it decided defendant was guilty of bad faith by refusing to defend him in the action brought against Epstein by Fisher. The court granted a compulsory nonsuit.

At the argument before the court in banc on the motion to take off the nonsuit, the following questions were raised, to wit:

1. Did the judgment rendered in favor of Riva Fisher against defendant in the United States district court in Pittsburgh, in the sum of $5,000, render the present action brought by Epstein against defendant res adjudicata?

2. Can the insurance carrier be held liable in an amount in excess of the limit stated in its contract, where it openly refused to defend the assured?

3. If it be assumed that bad faith on the part of an insurance company, in dealing with the insured, could give rise to liability on the part of the insurer beyond the limits of its liability set forth in its policy, is there any bad faith shown on the part of the insurer?

We are of the opinion that the doctrine of res adjudicata does not apply. In 34 C. J. 742, §1154, it is stated:

"The doctrine of res judicata, first definitely formulated in the Duchess of Kingston's case, embodies two main rules, which may be stated as follows: (1) The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal. (2) Any right, fact, or matter in

issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject matter of the two suits is the same or not."

And this statement is in accord with the principles set forth in our Pennsylvania decisions.

Applying these rules to the instant case, we find that the case of Riva Fisher against this defendant, tried in the United States district court in Pittsburgh, was in assumpsit based upon a contract, the insurance policy issued by defendant to Epstein, whereas the instant case brought by Epstein against Erie Indemnity Company is in trespass, based on an alleged tort, to wit, bad faith. The sole parties to the said action brought in the United States district court were Riva Fisher as plaintiff and Erie Indemnity Company as defendant; whereas, in the instant case, the parties are Israel Epstein, plaintiff, and Erie Indemnity Company, defendant. In the said action in the United States district court, the sole question at issue was whether there had been a breach of certain conditions in the insurance policy issued by defendant to Epstein, in refusing to defend him in the action brought against him by Fisher in the courts of Cuyahoga County, Ohio. No question of bad faith was raised during that trial, whereas the issue raised in the instant case is based specifically on the allegation that defendant, in refusing to defend Epstein, acted in bad faith.

We have before us the question of what parties are concluded by said judgment obtained by Riva Fisher against Erie Indemnity Company in the United States district court. In our opinion Erie Indemnity Company is concluded by the judgment insofar as concerns defendant's contention of a legal justification for its refusal to

defend Epstein in the case brought against him by Riva Fisher in the courts of Cuyahoga County, Ohio.

However, we are of the opinion there is no res adjudicata as to the question of bad faith on the part of Erie Indemnity Company, for that question was not mentioned in the pleadings or evidence in the action brought in the United States district court. The sole question decided in that case was that Erie Indemnity Company was not legally justified in refusing to defend Epstein in the action brought against him in the courts of Cuyahoga County, Ohio, by Fisher, but it did not decide said defendant was guilty of bad faith.

Epstein here claims for a liability in excess of the fixed limits set forth in the policy issued to him by defendant and, therefore, his claim is entirely independent of any contractual obligation contained in the insurance policy, except as that obligation may form an element in the attempt to prove fraud and bad faith on the part of defendant.

An exhaustive search fails to disclose any decision by the appellate courts of Pennsylvania permitting recovery against a liability insurer for more than the policy limit, or covering such a situation as is presented in the instant case. However, we do find a Federal case where this question was raised and which we feel is of controlling weight in passing on this question of res adjudicata.

In Ohio Cas. Ins. Co. v. Gordon et al., 95 F.(2d) 605 (1938), the insurance company was required to pay the injured person an amount up to the limits stated in its policy contract. The insured then brought a separate action claiming for the excess amount of the judgment recovered against him and alleging the insurance company was guilty of bad faith in refusing to defend the insured. The Federal court held, as to the question of res adjudicata, that, although the previous garnishment proceeding had determined that the refusal of the insurance company to defend was not justified, nevertheless the new and independent claim of bad faith, set up by the insured

as a basis for his recovery of the excess amount of the original judgment, had not been determined by the previous action. We are of the opinion that this decision applies with like force and significance to the question of res adjudicata in the instant case, and that the issues decided in the suit of Fisher against this defendant in the United States district court are not res adjudicata in the instant case.

The second question raised is whether the insurance carrier can be held liable in an amount in excess of the liability limits stated in its policy contract in a case where, at the very inception of the suit brought against its policyholder, it flatly refused to defend the assured.

In the instant case, defendant informed Epstein, when the action was first brought against him by Riva Fisher, that it would not defend him because he had not coöperated by giving defendant a true statement as to the real cause of the accident. Thus, at the very inception of litigation the insurance carrier frankly relinquished to its assured all control and management of his defense and left him free to select his own counsel and prepare his own defense. It is obvious that this situation is quite different than one where the insurance company assumes complete control of the defense and later fails to conduct the defense efficiently or refuses to effect a reasonable settlement if one has been offered, and thus not only places the insured in a helpless situation as regards a defense, but also leaves him without power to make a settlement on his own account. After the insurer has assumed control of the defense, the insured has no right to settle the claim; thus, by arbitrarily or carelessly disregarding the interests of the insured, the insurer thereby makes him take the entire risk of an excess judgment. Therefore, by undertaking the assured's defense the nature of the relation is somewhat that of a fiduciary, and it is but fair that the insurer should be required to exercise good faith in conducting the defense.

However, as in the instant case, where the insurance company openly abandons its right to control the defense,

and asserts there is no coverage, the insured then has complete control of his own defense with the right to settle the case for any amount above or below the liability stated in the policy. The refusal of the insurer to conduct his defense leaves the insured in a more advantageous position as to exercising his own initiative and judgment in preparing his defense. This distinction is recognized in several decisions by the Federal courts. See Ohio Cas. Ins. Co. v. Gordon et al., supra, and Maryland Cas. Co. v. Elmira Coal Co., 69 F. (2d) 616, where the circuit court of appeals declared that any possible liability in excess of the amount stated in the policy contract is founded only upon a misuse of the power and control over the defense. To the same effect are the decisions in Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852, Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Md., 162 Wis. 39, 155 N. W. 1081, St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 201 U. S. 173, and Butler Brothers v. American Fidelity Co., 120 Minn. 157, 139 N. W. 355.

The principle appears to be widely recognized that, where the insurance carrier has openly refused to conduct the defense, and thus completely abandoned its right to control the defense, and in the event a judgment is rendered against its assured the insurance company then becomes liable only for an amount not to exceed the limits of its liability as set forth in its policy.

In the instant case the refusal of defendant to defend Epstein at once left him free to employ, and he did employ, other counsel who conducted his defense without interference by the defendant.

As to the third question raised, whether there is any showing of bad faith on the part of defendant in dealing with Epstein, in refusing to defend him in the suit brought by Riva Fisher, we conclude that defendant was not guilty of bad faith. In Ohio Cas. Ins. Co. v. Gordon et al., supra, where it appeared there were contradictory statements made by the assured as to whether his truck

was towing a trailer, in violation of a provision in the policy, the court held that under these circumstances a failure correctly to forecast the result of pending litigation concerning liability was no indication of bad faith, and affirmed the decree of the lower court which had denied liability for an excess amount by the insurance carrier. In that case it was recognized that the insurance company was placed in a dilemma by a discrepancy in a statement of the circumstances relating to the accident, as reported by its assured, and was therefore justified in abandoning its right to defend and letting the assured conduct his own defense, with the understanding that the insurance carrier would have to pay only up to the amount limited in its policy in the event the verdict reached that amount.

In Mendota Electric Co. v. New York Indemnity Co., 175 Minn. 181, 221 N. W. 61, the Supreme Court of Minnesota held that where an insurance company, acting on advice of its counsel, refused to contribute more to a fund to meet a proferred settlement than had been offered by one of the other parties involved, the fact that advice of the insurer's counsel might have been faulty did not, of itself, show bad faith on the part of the insurer. The Supreme Court said (p. 183) :

"That opinion [of counsel] was probably open to question, but there again we find no evidence of bad faith. . . . It takes something more than mere mistake to constitute bad faith, particularly with respect to the action of an insurer under a policy of public liability which is not absolutely bound to make a settlement. The right to control negotiations for a settlement must of course be subordinated to the purpose of the contract, which is to indemnify the insured within the contract limit. But it takes something more than error of judgment to create liability."

In Lawson & Nelson Sash & Door Co. v. Associated Indemnity Corp., 204 Minn. 50, 282 N. W. 481, an action by an assured against his insurance carrier to recover the excess amount of the verdict recovered against him, the

Supreme Court of Minnesota held that the fact that the advice of the carrier's local counsel, as well as of its general counsel, upon which the carrier acted, had turned out to be incorrect was not a showing of bad faith.

At the trial in the instant case, plaintiff's answers show that, during the month immediately following this accident, he indulged in considerable vacillation and indecision in regard to his intentions for making claims for liability and during which time defendant company was endeavoring to obtain from him a statement of the real cause of the accident.

We are of the opinion that the conduct of defendant company, from beginning to end, demonstrated good faith on its part toward Epstein. Plaintiff's testimony fails to show that Epstein was misled or that any unfair tactics were employed against him by defendant.

The trial judge in granting the compulsory nonsuit ruled that the decision in the case of Riva Fisher vs. the defendant, tried in the United States District Court, did not render the present action res adjudicata, also that there was not sufficient evidence offered to show that defendant had acted "in bad faith, maliciously, fraudulently and intentionally", to warrant submitting the case to the jury. Upon a review of the testimony and in the light of the authorities cited, the court in banc is of the opinion the trial judge was justified in granting a compulsory nonsuit.

### Order

And now, to wit, January 10, 1940, plaintiff's motion to take off the nonsuit is refused, at the cost of plaintiff.

---

NOTE.—An appeal from the foregoing was taken to the Supreme Court of Pennsylvania, which affirmed at bar on October 28, 1940.