Tony RIPEPI, individually and Tony Ripepi, t/a/d/b as Keystone Music Company, Plaintiff,

v.

The AMERICAN INSURANCE COMPANIES, Defendant.

Civ. A. No. 64–318.

United States District Court
W. D. Pennsylvania.

Oct. 5, 1964.

5. Docket No. 34013, Rules to Govern the Assembling and Presenting of Cost Evidence.

On March 3, 1958, John Smiechowski, a truck driver, made a delivery of cigarettes to plaintiff's place of business. This was his first delivery for the day, and there was a narrow place about a foot long at the end of the truck where he was standing. He handed several cartons of cigarettes to an employee of plaintiff's who wheeled them away. While this employee was away from the truck, the driver slipped and fell about five feet to the ground, landing inside the door on plaintiff's premises. Plaintiff's employee brought him a chair, and shortly thereafter plaintiff took him to the hospital, where he visited him on several occasions.

The driver said nothing to plaintiff or his employee regarding the manner or cause of his fall. Plaintiff made no inquiries, and did not apprise the defendant of the incident.

Some seventeen months later, on August 11, 1959, after having consulted the J. P. McArdle firm, the truck driver sued plaintiff, alleging that he had, before his fall, been inside the building to give his bills to an employee named Rose, and that he must have then inadvertently stepped into a deposit of dog dung which he sought to avoid, and that later this substance on his shoe caused him to slip and fall from the truck.

Smiechowski persisted in this story to the date of trial of this action in this Court, testifying that he saw the dirt on his shoe while sitting on the chair in plaintiff's place of business and looking down, but that he was then in a state of shock and did not mention it. He also says that he saw it in the emergency room at the hospital and wiped it off on a towel which he threw in the wastebasket. There were no visible indicia of fabrication in the witness's demeanor, and a jury might well have accepted his version of the circumstances of his injury.

Promptly after service of suit papers plaintiff notified defendant, but defendant refused to defend the case.

------⟡------

Margiotti & Casey, Pittsburgh, Pa., for plaintiff.

Harold Gondelman, Herbert Jacobson, Pittsburgh, Pa., for defendant.

DUMBAULD, District Judge.

This is a diversity [1] action against an insurance company which failed to defend a suit against a policyholder for personal injuries allegedly sustained on the insured premises. A verdict of $4850.00 and counsel fees of $5500.00 (together with expenses of $110.50) are sought. Jury trial has been waived. This opinion shall be deemed to constitute findings of fact and conclusions of law.

1. Plaintiff is a Pennsylvania citizen, defendant a New Jersey corporation. The amount involved is $10,460.50.

Plaintiff thereupon retained Vincent Casey, Esquire, to handle the case. Mr. Casey is a lawyer of considerable prominence, experienced in this type of work, having defended many personal injury cases while his firm had a retainer from the B. & O. Railroad. It was reasonable, legitimate, proper and appropriate for plaintiff to select Mr. Casey to handle his case, even though no prior legal business had been handled for plaintiff by Casey.[2]

■ Plaintiff was not required to employ the cheapest lawyer he could get, or solicit competitive bids or hire a starving, obscure young practitioner. Just as a taxpayer need not lodge in the cheapest room of the most inexpensive hotel in order to make his reasonable traveling expenses deductible, plaintiff here was not obliged to shop around before retaining competent and capable counsel. We find and hold that plaintiff's retaining Casey was a legitimate and reasonable measure, necessitated by defendant's failure to defend the case. It was not a collusive scheme, to "soak" the insurance company.

We find and hold also that Casey handled the case in a normal, reasonable, lawyerlike manner, displaying appropriate professional skill, judgment and discretion.

After the usual pretrial steps, and after the case had been called for trial, and after the jury had been sworn, a directed verdict was entered by consent of the parties in the amount of $4850.00.

■ We find and hold that this settlement was a proper exercise of professional judgment by Mr. Casey. He had been told by Judge Alpern at pretrial and by Judge Smith at the trial that the case would go to the jury. Defendant seeks to discount these statements as merely made for bargaining purposes to promote settlement. But defendant's expert witness Mr. Lancaster, engaged in defense work for insurance companies (including defendant, to the extent of 10% of his practice), candidly conceded that an attorney may properly pay some attention to what a judge says in determining his trial strategy.

Mr. Casey also had knowledge of two medical reports indicating permanent disability in the truck driver's elbow. There were medical bills of $1,275.85. The fact that Smiechowski is still driving a truck is hindsight. The propriety of settlement is to be judged by counsel's reasonable estimate of the situation at the time. As stated before, the truck driver's story sounds plausible, and though it may seem to have its comic aspects, had to be taken seriously by trial counsel.

Defendant stresses that Smiechowski's story was weak, because he did not speak of the dung earlier, and that there was no witness to prove sufficient notice to the owner of the premises. But this merely goes to the weight of the evidence, and it might be anticipated that the truck driver by further refreshing his recollection might remember that the dung was dried and hardened and must have been on the floor for many months. These factors favoring the defense do not disprove the wisdom of counsel's decision to settle.

As Mr. Lancaster also conceded, it is more important to an individual, who is only a casual, sporadic, and infrequent litigant, whether he wins or loses a lawsuit which may eat up his life's savings than it is to a professional litigant, such as an insurance company, which is in the business of litigation, collects premiums

2. In Aluminum Co. of America v. Glaros et al., in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. 1697 April Term 1961, 112 Pgh.Legal Journal 393 (1964), the attorney employed was the company's regular counsel in other matters (such as antitrust litigation and the like). In other respects the excellent opinion of Judge Weir, approving a fee of $23,300 (increased by interest to $30,488.29), is applicable here. If excessiveness is a question governed by State law we accept Judge Weir's opinion as persuasive authority; if it is a federal question, our own discretion leads to the same result. Lebeck v. Jarvis, 250 F.2d 285, 288 (C.A.3, 1957).

and sets up reserves for the purpose of paying verdicts, and can set off against each other the lean and fat verdicts, so that the wins and losses average out over the long pull.

Mr. Lancaster also conceded that a jury might have awarded $25,000.00 and that Mr. Casey's settlement was a good result, advantageous to plaintiff.

Accordingly we find and hold that Mr. Casey handled the case properly, and that the verdict of $4850.00 was a bona fide and reasonable disposition of the matter as the result of arms length negotiation and the due exercise of professional judgment.

The verdict, therefore, should be paid, under one of the covenants which an insurer undertakes for the benefit of its policyholder. Gedeon v. State Farm Mutual Ins. Co., 410 Pa. 55, 58–59, 188 A.2d 320 (1963).

But as that case explains, the insurer also has another duty, that of affording the insured a defense. "Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, * * * the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy" (supra, p. 58, 188 A.2d p. 321, italics those of Mr. Justice Cohen).

■ It cannot be said that Smiechowski's complaint here did not potentially come within the policy coverage. Obviously the defendant insurance company was under an obligation to defend and must pay Mr. Casey's fee, which we find to be reasonable and proper in amount.

■ Defendant's effort to prove the fee excessive rests mainly on an attempt to apply a per-hour charge to an assumed period of time spent on the case. But, as is well known and recognized in the American Bar Association's canons on fees, the amount of time spent on a case is only one factor entering into the amount of the fee. Other factors properly to be taken into account are the result reached, the importance *vel non* of the case to the client, the client's ability

to pay, whether case is for a casual "walk-in" client or for a regular client on retainer, the time taken from work for other clients, the professional stature of the attorney, his customary charges to other clients, and the like.

■■ No attempt has been made here to attack Mr. Casey's qualifications, but we may take judicial notice of the fact that he does have an extensive and presumably lucrative practice in other fields than personal injury work for institutional defendants such as the B. & O. United States v. Sams, 219 F.Supp. 164, 165 (W.D.Pa.1963). Mr. Casey testified that the fee here was commensurate with his customary charges and was not inflated in order to "soak" the insurance company. We find and hold that the fee charged is reasonable in amount and not excessive. Defendant must pay it.

■ It remains to consider defendant's contention that it is relieved by plaintiff's failure to give notice of the incident of March 3, 1958, before suit was filed, citing Jeannette Glass Co. v. Indemnity Insurance Co. of N. America, 370 Pa. 409, 88 A.2d 407 (1952). As in that case, the policy here provides:

"9. Notice of Accident. When an accident occurs written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

The factual situation here is different from that in Jeannette. There an employee of a contractor was injured when a steel beam fell and hit him during the course of construction work on the premises. It was thus obvious that there was an accident within the meaning of the notice provision of the policy. The case holds that in such a situation an insured is not justified in substituting its judgment for that of the insurance com-

pany (or of a court and jury) and withholding notice merely because of its opinion, after investigation, that it incurred no liability. The Court emphasized that an insured relying on its own *legal conclusion* does so at its peril.

In the case at bar, however, plaintiff had no knowledge of any *facts* which might obligate it to give notice.

Smiechowski had made no allegations concerning the dung; plaintiff and his employee had seen none. There was no accident of any kind relating to the insured premises in the sense of the provision in the policy.

Technically it may have been a trespass *quare clausum fregit* when the driver fell off the truck and landed on the floor of plaintiff's building (just as it would have been if two automobiles had collided on the highway and thrown a passenger onto plaintiff's premises), but no accident relating to the coverage for "The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto" was within the knowledge of plaintiff until receipt of the allegations regarding (1) Smiechowski's preliminary visit inside the building before he fell and (2) the alleged existence of dog dung, both of which circumstances, so far as plaintiff could be expected to know, were non-existent, until some reason for supposing them to exist had come to his attention.

Murphy & Co. v. Mfrs. Casualty Co., 89 Pa.Super. 281, 286 (1926), and St. Louis Dressed Beef Co. v. Casualty Co., 201 U.S. 173, 181–183, 26 S.Ct. 400, 50 L.Ed. 712 (1906), dispose of defendant's further contention that it can not be sued "until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written statement of * * * the Company". As Justice Holmes says "a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." (201 U.S. at 182, 26 S.Ct. at 404.)

Besides, after a jury is sworn one can not say that there has not been an actual trial. This is the rule in criminal cases in determining when jeopardy begins. Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949); Kepner v. United States, 195 U.S. 100, 128, 24 S.Ct. 797, 49 L.Ed. 114 (1904). The same rule seems applicable here.

In accordance with the foregoing, we find in favor of plaintiff and against defendant in the amount of $10,460.50 with interest and costs.