**SPACE CONDITIONING, INC., a Maryland Corporation, Plaintiff,**

**v.**

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. A. No. 27519.**

United States District Court
E. D. Michigan, S. D.

Dec. 13, 1968.

4. Alternatively, "smidgen" or "smidgeon". See Webster's Third New International Dictionary, p. 2151.

Robert E. Sullivan, Sullivan, Sullivan, Hull & Ranger, Detroit, Mich., for plaintiff.

G. Cameron Buchanan, Alexander, Buchanan & Conklin, Detroit, Mich., for defendant.

## OPINION

LEVIN, District Judge.

Plaintiff, Space Conditioning (hereinafter referred to as the plaintiff), is a Maryland Corporation engaged in the business of selling heating and air conditioning equipment. It is the successor to Warren Webster & Company. The Insurance Company of North America (hereinafter referred to as defendant) is engaged in the business of selling multiple lines of insurance.

On or about January 7, 1956 Warren Webster entered into a contract of liability insurance with the defendant, entitled "Blanket Liability and Automobile Policy #9LAB6884, Especially Prepared for Warren Webster & Company." The policy provided as follows:

"Bodily Injury Liability"—

" * * * to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability inposed upon him by law, or assumed under contract, for damages * * * sustained by any person or persons and *arising out of* * * * all other operations of the insured as defined herein." (emphasis added)

"Property Damage Liability"—

" * * * to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed under contract, for damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident and arising out of* * * * all other operations of the insured as defined herein." (emphasis added)

"Operations"—

" * * * the manufacture, distribution, and sale of heating specialties and distribution and sale of air conditioning systems and all operations of the insured related thereto."

"Defense, Settlement, Supplementary Payments"—

"As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any suit against the insured alleging such injury * * * and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent * * *; (c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interests accruing after entry of judgment until the company has paid, tendered or deposited in such part of such judgment as does not exceed the limit of the company's liability thereon * * *"

"Exclusions"—

" * * * this policy does not apply: (c) to injury to or destruction of (1) property owned by, rented or leased to the insured, or

(2) except with respect to the use of elevators or escalators or liability assumed under any sidetrack agreement, property in charge of or transported by the insured, or (3) any goods or products manufactured, sold, handled or distributed by the insured, or work completed by or for the insured, out of which the accident arises * * * "

While the policy was in effect Warren Webster sold some of its manufactured products to the High Life Inn in Saginaw, and participated in the installation of this equipment. It is alleged that this equipment leaked and did not work as represented. The High Life Inn later brought suit against Warren Webster, alleging both personal injury and property damage as a result of Warren Webster's acts and omissions.

The complaint, which the High Life Inn filed in the Saginaw County, Michigan, Circuit Court alleged that Warren Webster

"24 * * * did negligently * * * design and/or manufacture the said equipment, and that the same is not fit for the purposes of the Plaintiff, said purposes having been previously disclosed to Webster.

"27 * * * is liable to Plaintiff by virtue of the breach of implied warranty * * *; that the purpose for which said goods and materials were to be used * * * was fully known to Defendant Webster and that Plaintiff * * * relied upon these facts * * * and that as a consequence of said reliance, the Plaintiff did purchase said material and equipment all to his damages * * *

"28 * * * That in addition to the breach of implied warranty by * * * Webster, Defendant Webster did breach its express warranty to this Plaintiff by making the representations heretofore referred to * * * for the purpose of selling said equipment to Plaintiff * * *

"30. That Defendant Webster carelessly, wantonly, and willfully made

* * * false representations * * * as to the fitness, suitability, and adequacy of said equipment * * *

"35. That in addition to the said equipment being defective * * *, said equipment could not be installed properly even though the installation procedures outlined by Defendant Webster were followed * * * "

High Life's damages from these claimed acts and omissions of Webster were allegedly that

"35 * * * as a consequence, condensation and leakage formed in and about Plaintiff's place of business, destroying and damaging Plaintiff's building, and interrupting his business and profits.

"36 * * * as a consequence of the said false representations * * * and * * * of said breaches of warranty * * *, the Plaintiff's business was interrupted, Defendants Richter have increased by thousands of dollars the cost of installing a heating and air conditioning system over and above what it was originally estimated the cost would be; the Plaintiff's business has been damaged and interrupted from time to time, the system does not work and never will be able to work in the Plaintiff's place as represented; that it will cost thousands of dollars to alter or rip out said system which has been built in Plaintiff's building." and, finally,

"37. That Plaintiff has suffered in health, that his business has lost revenue, that he has been put to great damage and expense in attempts to repair said systems; and that the Plaintiff has paid thousands of dollars for a heating and air conditioning system which does not work properly; that Plaintiff's business has not reached the potential that it could have reached had the air conditioning system functioned as it should; and that Plaintiff's health has been injured and damaged as a consequence of said breach of warranties and misconduct of the Defendant as heretofore alleged."

Upon receipt of the summons and complaint, Warren Webster turned both over to the defendant asking that a defense be provided under the "duty to defend" provision quoted above. The defendant refused to defend, claiming that there was no coverage under the policy of insurance for the allegations contained in the High Life complaint.

At the trial, High Life presented the following itemization of its damages:

"SUMMARY OF ALL DAMAGES:

| | |
|---|---|
| Purchase price and cost of removal of old system | $ 48,533.66 |
| Loss of profits | 158,000.00 |
| Less settlement from Reichle, $1,500.00 | − 1,500.00 |
| Complete Total: | $205,033.66" |

---

The jury returned a verdict against Warren Webster in the amount of $80,000.00 and a judgment was entered thereon. Warren Webster paid $70,000.00 in satisfaction of this judgment, and, in addition, paid $12,046.47 as attorney's fees.

The plaintiff brought this action, alleging that the defendant breached its duty under the contract by refusing to defend the suit brought against Warren Webster, and by refusing to contribute to, indemnify, or otherwise reimburse Warren Webster for the expenses incurred in the defense of the suit and in the payment of the judgment rendered against it. The facts are stipulated and the Court has before it motions for summary judgment submitted by both parties.

The insurer's duty to defend under an insurance contract is measured by the allegations in the pleadings of the person who is suing the insured, Guerdon Industries, Inc. v. Fidelity & Casualty Co., 371 Mich. 12, 123 N.W.2d 143 (1963); American States Insurance Co. v. Stachowski, 249 F.Supp. 189 (E.D. Mich.1965); 29A Am.Jur., Insurance, § 1452, and is not dependent on the insurer's ultimate liability to pay. Guerdon Industries v. Fidelity, supra; City Poultry & Egg Co. v. Hawkeye Casualty Co., 297 Mich. 509, 298 N.W. 114 (1941); St. Paul Mercury Insurance Co. v. Huitt, 336 F.2d 37, 44 (6th Cir. 1964). The insurer's duty to defend is not limited to meritorious suits, Burton v. State Farm Mutual Auto Ins. Co., 335 F.2d 317 (5th Cir. 1964), and may even extend to actions which are groundless, false, or fraudulent, 29A Am.Jur., Insurance, § 1448, Hoosier Casualty Co. v. Chimes, Inc., 95 F.Supp. 879 (E.D.Mich.1951), so long as the allegations in the action against the insured even arguably come within the policy coverage. Hoosier Casualty v. Chimes, supra; American Indemnity v. Sears, Roebuck & Co., 195 F. 2d 353 (6th Cir. 1952); 7A Appleman, Insurance Law & Practice § 4683. The insurer is under a duty to defend if the complaint alleges facts constituting a cause of action within the insurance coverage, even if other facts constituting causes of action not covered by the policy are also alleged. 7A Appleman, supra, § 4683; Couch on Insurance (2d Ed.), § 51:50.

The High Life Inn plaintiffs claim both personal and property damage injuries against Warren Webster, alleging damage to their place of business, interruption of their business (which must be considered property damage), and damage to their health due to Warren Webster's acts. The High Life plaintiffs also asserted as an item of their damages the claim that the Warren Webster equipment would never be able to work as represented, and hence would have to be removed from their building and replaced, at great expense to them.

■ There appear to be three basic items of damages which the plaintiffs in the High Life Inn case asserted in their complaint against Warren Webster. The first of these, the alleged personal injuries and damage to the health of the owners of the High Life Inn, most easily falls within the coverage provided by the insurance policy. These injuries allegedly resulted from the faulty equipment put into the High Life Inn by Warren Webster. "[A]ll other operations of the insured" (see page 1, supra, "Bodily Injury Liability") include the distribution and sale of air conditioning equipment, and hence it could be found that the High Life plaintiffs had suffered personal injuries which arose out of these operations. Thus, if the High Life Inn plaintiffs were able to prove that these bodily injuries were caused by the malfunctioning of the plaintiff's equipment, this would be covered by the insurance agreement. In any event, it is clear that these allegations constituted a law suit alleging an injury covered by the policy, obligating the defendant to defend even though these allegations might have been "groundless, false, or fraudulent."

■ The second items of damages asserted against Warren Webster were those made up of the alleged property damage to the High Life Inn and the interruption of its business due to the faulty working of the equipment. For these items of damage to be covered by the policy, they must have been caused by accident and arise out of "all other operations of the insured * * *" (see page 1, supra, "Property Damage Liability"). It cannot be contended that the damage here did not arise out of the operations of Warren Webster. The question remains whether these injuries were the result of an "accident" bringing them within the policy coverage.

Under Michigan law, as set forth in Guerdon Industries v. Fidelity, supra, 371 Mich. at 18–19, 123 N.W.2d at 147,

"An 'accident' within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." quoting 10 Couch on Insurance (2d Ed.), § 41:6, p. 27.

In the Guerdon case, there was an insurance policy similar to the one before the Court. The plaintiff in that case, a manufacturer and seller of house trailers, was sued for injuries allegedly resulting from inferior plumbing and installation of plumbing in a trailer sold by it. The insurance policy was before the court in a declaratory judgment action seeking to determine whether Fidelity had a duty to defend against this action, where the policy covered the insured against law suits alleging injuries sustained by any person and caused by accident. The court, relying upon the above definition of "accident", held that

" * * * the claim of injury to persons and damage to property alleged in the Wallens' declaration to be the result of the insured's failure to provide the trailer with adequate drainage fittings and an adequate drainage connection was such an unanticipated, unforeseen, and unexpected occurrence as to be 'caused by accident' within the meaning of the policy." Id. at 19, 123 N.W.2d at 147.

In the case of Brant v. Citizens Mutual Automobile Insurance Company, 4 Mich. App. 596, 145 N.W.2d 410 (1966), the Brants had sold Hughes a natural gas heater rather than a heater equipped to burn butane or liquid petroleum gas, resulting in Hughes' death by asphyxiation. The Brants' policy specifically excluded "products hazard" coverage. The court held that there were two "accidents" involved in the situation before it, one, when the Brants sold Hughes the wrong type of heater, and the second when this

heater was connected to the wrong type of fuel for it, causing Hughes' death. The court held that because these were accidents, coverage was provided by the insurance policy in question, and stated further, at 600, at 412 of 145 N.W.2d, that

> "The fact that the claims here involved breach of warranty or negligence did not remove them from the category of accident. * * * If the liability policy were construed so as to cover only accidents not involving breach of warranty or negligence, then no protection would be given to the insured. The insured would not need liability insurance which did not cover the only claims for which it could be held liable." quoting Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151, 153 (6th Cir. 1962).

Looking at these authorities, it is clear that the alleged property damage in the High Life suit was caused by accident within the meaning of Michigan law, and that the High Life action was a "suit against the insured alleging such injury * * * and seeking damages on account thereof * * *", obligating the defendant to provide a defense to Warren Webster.

The third item of damages alleged by the High Life plaintiffs were those involving the claim that the Warren Webster equipment would never be able to work as represented, and hence would have to be removed from the High Life Inn and replaced, at great expense. This item of damages is the most difficult of the three to fit within the coverage of the policy. I do not find it necessary to reach this question, but for the purpose of determining the rights of the parties herein, it may be assumed that these damages do not come within the policy coverage.

The Court finds that the defendant was under a duty to defend the plaintiff by virtue of the "duty to defend" clause of the insurance contract. Two of the three major items of damages concerned injuries which, if proven, would come within the coverage of the policy. As noted above, the fact that the complaint alleges some facts within and some facts outside policy coverage does not relieve the insurer of its duty to defend. The defendant now concedes in its brief that "it had a duty to defend that plaintiff in the Circuit action," and in its own motion for summary judgment agrees that the plaintiff be awarded $12,046.47, being the amount of its attorney's fees in connection with the High Life case.

■■ An insurance company which refuses to defend believing there to be no policy coverage, does so at its peril, even if in good faith, and must bear the legal consequences of its breach of contract. Ripepi v. American Insurance Companies, 349 F.2d 300 (3rd Cir. 1965), 234 F.Supp. 156 (W.D.Pa.1964); 7A Appleman, supra, §§ 4686, 4689. Wrongful failure to defend may preclude an insurance company from raising a coverage defense in a subsequent action. 7A Appleman, id; Sims v. Illinois National Casualty Company, 43 Ill.App.2d 184, 193 N.E.2d 123.

In a situation in which an insurance company believes there to be no policy coverage, but where they are nevertheless asked to defend the law suit, it may protect its interests in several ways. For example, it may proceed to provide a defense, having previously obtained a non-waiver agreement from the insured which would provide that the rights of the company would not thereby be prejudiced. 29A Am.Jur., Insurance, § 1451; 7A Appleman, supra, § 4686. Or, the company may bring a declaratory judgment action against the insured, prior to the trial of the law suit in the principal case, to adjudicate the questions of duty to defend and policy coverage. Sims v. Illinois National, supra; 7A Appleman, supra, § 4689.

■ The defendant now admits that a defense should have been provided under the insurance agreement, but contends that it is not obliged to indemnify the plaintiff as to the High Life judgment since the "bulk of High Life's

claims were outside the policy * * * ". The defendant argues further that "because the verdict rendered by the jury in favor of High Life and against the plaintiff was a *general one*, it is [now] impossible to determine the basis of said verdict and plaintiff cannot now go behind it and say defendant must pay it."

The total of $205,033.66 asked of the jury was broken down into claims for loss of profits and for the purchase price and cost of removal of the Warren Webster system. I cannot divine what items of damages made up the $80,000 verdict of the jury.

The defendant points to this inability to go behind the jury verdict, and states that "Plaintiff sues on a Judgment but cannot show it was entered solely on the basis of property damage caused to High Life's premises by plaintiff's defective system. Therein lies the fatal defect in plaintiff's case." This reasoning is not helpful to defendant, who continues,

> "Specific proofs on this point or special questions to the jury indicating the amount of their award under this portion of the claim would be essential to a determination of defendant's obligation with reference thereto."

The Court in Comunale v. Traders and General Insurance Company, 50 Cal.2d 654, at page 660, 328 P.2d 198, at page 202, 68 A.L.R.2d 883 (1958), wrote that

> "An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. * * * The insurer should not be permitted to profit by its own wrong."

The Court does not believe that the defendant, who wrongfully refused a defense to the plaintiff, can now come in and assert as a defense to this action the claim that only with special questions to the jury in the High Life case could the amount of the defendant's ob-

ligation to the plaintiff have been ascertained. To allow this defense would be to allow the defendant to profit from its wrongful refusal to defend. (See Employers Mutual Liability Insurance Company of Wisconsin v. Pacific Indemnity Company, 167 Cal.App.2d 369, 334 P.2d 658, 664 (1959)) and would put the defendant in a better position than it would have been had it recognized its obligation at the time of the High Life suit. See Comunale v. Traders, supra, 50 Cal.2d at 660, 328 P.2d 198.

The Court finds that the defendant is liable to the plaintiff for the amount paid out by it in satisfaction of the judgment, the attorney's fees in the amount of $12,046.47, and interest thereon. Costs are to be taxed.

An appropriate form of judgment in accordance with this opinion may be presented for signature.