623 A.2d 928

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Plaintiff,

v.

The MUTUAL FIRE, MARINE AND INLAND INSURANCE COMPANY, Defendant.

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, as Rehabilitator of the Mutual Fire, Marine and Inland Insurance Company, and Ronald G. Aller et al., Plaintiffs,

v.

EVANSTON INSURANCE COMPANY, Defendant.

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1992.

Decided March 24, 1993.

See also 154 Pa.Cmwlth. 366, 623 A.2d 933.

Richard DiSalle, Roger Curran and James J. Black, III, for plaintiffs.

James J. Binns and John M. Elliott, for defendants.

Before CRAIG, President Judge, McGINLEY, J., and LORD, Senior Judge.

LORD, Senior Judge.

Before us for disposition are (1) the preliminary objections of Evanston Insurance Company (Evanston) to the complaint filed against it by the Insurance Commissioner of Pennsylvania, acting in her capacity as the statutory rehabilitator (rehabilitator) of the Mutual Fire, Marine and Inland Insurance Company (Mutual Fire); and (2) the preliminary objections of

the involuntary plaintiffs Francis M. Reilly, Albert Kelly and Jewel Westerman who were joined by the rehabilitator in her complaint against Evanston.

The plaintiff Insurance Commissioner is the statutory rehabilitator of Mutual Fire, which was found to be insolvent and placed into rehabilitation by this Court in January, 1990.[1] Pursuant to her statutory powers,[2] the rehabilitator filed this complaint for declaratory judgment asking this Court to declare that the Professional and Directors and Officers Liability Policy No. CE1L0278, covering the period 1982 through 1985, written by Evanston and purchased by Mutual Fire, with coverage of $20 million per claim and in the aggregate, remains in effect.

According to the complaint, Shand Morahan & Company was the majority shareholder and manager of Evanston's business.[3]

At that time, Shand also served as Mutual Fire's largest managing general agent, writing Mutual Fire's policies and performing underwriting, claims handling, and reinsurance placement duties.

The complaint alleges that, in 1985, Evanston refused to honor Mutual Fire's option to renew under the above-mentioned directors and officers liability policy. Instead, Evanston forced Mutual Fire to accept a $3 million policy and increased the deductible and premium. These actions were due, says the rehabilitator, to Evanston's intimate relationship

1. *Grode v. The Mutual Fire Marine and Inland Insurance Company,* 132 Pa.Commonwealth Ct. 196, 572 A.2d 798 (1990). For a comprehensive discussion of the history of these rehabilitation proceedings, of which this action is a part, see *Foster v. The Mutual Fire Marine and Inland Insurance Company,* 531 Pa. 598, 614 A.2d 1086 (1992), *cert. denied sub nom Allstate Insurance Company v. Maleski,* —— U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993) and *cert. denied sub nom Republic Insurance Group v. Maleski,* —— U.S. ——, 113 S.Ct. 1066, 122 L.Ed.2d 371 (1993).

2. The powers and duties of the rehabilitator are laid out in Section 516 of Article V of the Insurance Company Law of 1921, 40 P.S. § 221.16, and include the pursuit of "all appropriate legal remedies on behalf of the insurer."

3. Evanston's business address is Shand Morahan Plaza, Evanston, Illinois. (complaint, para. 2).

with Shand Morahan, which afforded Evanston the opportunity not only to know beforehand of Mutual Fire's rapidly deteriorating financial condition and rapidly increasing risk exposure, but also to know at that time of specific acts or omissions by officers giving rise to losses under the policy.

It is Mutual Fire's position that Evanston's knowledge and resulting refusal to renew the $20 million policy triggered the "optional extension period" provision and the "discovery clause" of that policy and that, by operation of those two provisions, Evanston is obligated under the $20 million policy for claims now made.

## EVANSTON'S PRELIMINARY OBJECTIONS

Evanston demurs to the complaint and in doing so posits several reasons why the rehabilitator has failed to state a cause of action. First, Evanston cites the policy's "no action" clause:

> No action shall lie against the Insurer unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Insurer.

Evanston contends that the plain language of this provision of the insurance agreement prohibits actions against an insurer unless an insured's obligation to pay an amount certain has been fixed by a judgment or by settlement agreement. Evanston argues that enforcing "no action" clauses avoids needless expenditure of time and money in litigation over coverage when neither the fact nor amount of an insured's liability has been established. In this case, says Evanston, although the complaint alleges that claims in excess of three million dollars have been made against Mutual Fire and its directors and officers, the nature of these claims is wholly unknown and it is

pointless to litigate coverage when the insured may well escape liability completely.[4]

The rehabilitator counters that the case law has consistently interpreted "no action" clauses to apply only to actions for damages by "third parties"—that is, claimants against insureds—or claims by purported third party beneficiaries of insurance contracts; these clauses do not apply to actions by an insured against its insurer for declaratory relief to adjudicate issues of coverage. The rehabilitator argues that the cases on which Evanston relies are inapposite because in each case the "no action" clause was held to bar an action brought by *third parties* in which there was sought a declaration, in advance of any loss development, that the insurer had a duty to pay.[5]

The rehabilitator commends to us the case of *Eureka Federal Savings and Loan Association v. American Casualty Company of Reading*, 873 F.2d 229 (9th Cir.1989), primarily for the proposition that a justiciable controversy exists when an insured brings an action for declaratory relief against its insurer and that insured seeks to determine the limits of coverage. However, there, the insurer, like the defendant Evanston here, also asserted that an almost identical "no action" clause barred any declaratory judgment prior to a termination by judgment or settlement of the underlying claim, and we find the discussion of this question in *Eureka* illuminating.

4. Evanston contends that the claims made may be excluded under the policy, regardless of their amounts, in that they may be based, for example, on deliberately dishonest or fraudulent acts.

5. Evanston cites only federal caselaw interpreting "no action" clauses in insurance policies. To the extent that they would persuade us to decide these preliminary objections as Evanston urges, we think the rehabilitator correctly distinguishes *Batsakis v. FDIC*, 670 F.Supp. 749 (W.D.Mich.1987) on the basis that the action there was brought by beneficiaries of trusts administered by the insured. Likewise, we find *Zaborac v. American Casualty Company of Reading*, 663 F.Supp. 330 (C.D.Ill.1987) inapposite, because in that case the plaintiff sought a declaration that the insurer had a duty to pay indemnity before any loss developed.

In that case, the court noted that decisions in several federal circuits distinguished between actions by third parties and actions by insureds under the policy and held that the latter actions are not barred by "no action" clauses. *Id.* at 232. The court also recognized the distinction drawn in those and other decisions between actions for damages against the insurer and declaratory actions that adjudicate issues of coverage and defense. *Id.* at 238. Neither the rehabilitator nor Evanston refers us to cases in our jurisdiction, but we are convinced that the court in *Eureka* reached the proper result based on the following reasoning:

> Finally, we note that no action clauses are intended to prevent (1) actions against the insurer for a money judgment by the injured party until the damages have been fixed by final judgment or agreed settlement; (2) nuisance suits against the insurance company; and (3) an injured party or an insured from bringing the insurance company into the underlying litigation with possible resultant prejudice. *Paul Holt Drilling* [*, Inc. v. Liberty Mut. Ins. Co.*], 664 F.2d [252] at 254 [10th Cir.1981]; *Simon* [*v. Maryland Casualty Co.*], 353 F.2d [608] at 612 [5th Cir.1965]. These goals are not undermined by allowing Eureka to proceed with this declaratory action. We thus decline to apply the "no action clause" to bar an action by insureds under the policy for a declaration of liability limits, especially when the insured [sic] seek to facilitate settlement negotiations by establishing the policy limits.

*Id.,* 353 F.2d at 233.

■ Nevertheless, while we conclude that the policy's "no action" clause would not bar the rehabilitator's petition for declaratory relief under this policy, we are compelled to agree with the related argument made by Evanston that no cause of action lies because, under these circumstances, no justiciable controversy exists.

In her complaint, the rehabilitator alleges that certain policyholders notified Mutual Fire that they intended to assert claims against Mutual Fire and its former officers and di-

rectors and that a single creditor has notified Mutual Fire of its intent to assert a claim in excess of $15 million.

In addition, she alleges that the former policyholders committee in these rehabilitation proceedings filed a writ of summons against the directors and officers. Believing these claims to be derivative in nature, the rehabilitator also commenced an action against Mutual Fire's directors and officers by writ of summons in June, 1988. (complaint, paras. 25–27).

Evanston argues that, despite the allegation of the existence of these claims, no complaint has been filed against the directors and officers, no judgment against them has been obtained, no defense costs have been incurred, and none of the directors and officers has sought indemnification from the rehabilitator. There has been *no* occurrence, Evanston argues, that would give rise to an actual controversy over whether the $20 million policy or the $3 million policy is in effect. The rehabilitator's interest is too remote and speculative to support a claim for declaratory relief.

The rehabilitator counters that it was involved in settlement negotiations with Evanston when the rehabilitator determined that the $20 million policy should apply. When the parties did not agree as to how much coverage Evanston was responsible for, negotiations broke down. For the proposition that declaratory relief is warranted under these circumstances, the rehabilitator relies on *Eureka*, which we have already discussed in the context of "no action" clauses, and *ACandS, Inc. v. Aetna Casualty and Surety Company*, 666 F.2d 819 (3d Cir.1981). We agree with Evanston and, as we shall set forth, find the distinctions between the cases cited by the rehabilitator and this case dispositive of our resolution here.

In *ACandS*, the plaintiff insured appealed from the district court's dismissal of its suit for declaratory relief against the insurer. In reversing the court's dismissal of that suit, the Third Circuit held the claims were justiciable because the dispute between the parties was real and concrete. In that case, a dispute as to responsibility for coverage of asbestos claims prompted the insurance company to refuse to handle and defend lawsuits against the insured. In contrast, there

have been no such refusals here by Evanston; as we have noted, there has been no complaint filed against the directors and officers of Mutual Fire, only suits commenced by writ of summons.[6] While the court in *ACandS* did say that "it would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to judgment," *Id.* at 823, here the contingent nature of the claims alleged in the complaint to have been made against Mutual Fire renders declaratory relief inappropriate.

The rehabilitator protests that the dispute over how much coverage exists has prevented settlement negotiations between it and Evanston from proceeding. However, we think the halt in settlement negotiations is actually better evidence of the inability to shape a settlement strategy due to the unknown nature of the claims. It may be that the claims are not covered by the policy; it may be they will not exceed (or will not *likely* exceed) $3 million. Certainly, there has been no refusal to adjust or defend any claims.

Likewise, an examination of the controversy that existed in *Eureka* illustrates why one does *not* exist here. In the underlying action there, Eureka Savings and Loan Association, the insured, sued five former officers and claimed damages on various counts for losses incurred in over two hundred loan transactions. After the district court declined to grant the defendant's motion to dismiss, the parties attempted to settle. The policy stated that liability was limited to $20 million each loss and $20 million aggregate per year per officer. The question raised was whether the maximum liability was $20 million because the claims constituted a single loss or whether the claims involved numerous losses and the maximum coverage would thus be $100 million for the five

---

**6.** We recognize, of course, that the plaintiffs are under no obligation to file a complaint unless a rule to do so is filed upon them, and we do not hold that the absence of a complaint necessarily defeats an action for declaratory judgment. We simply point out that a complaint alleging a theory or theories of liability, identifying and quantifying the harm for which the plaintiff seeks to be compensated, is one definitive way in which the limits and existence of liability coverage may be called into real question.

officers. Eureka made a formal settlement demand on two of those officers for $20 million. The insurer refused to consider the demand because it believed that consideration exhausted the policy limits and that to do so would constitute a breach of its fiduciary duties to other insureds.

The facts in *Eureka* provide a stark contrast to the circumstances before us here. In that case, a complaint against the insureds had reached the dispositive motion stage, and a formal settlement demand immediately joined the issue of how much coverage the insureds enjoyed under the policy. Depending on which interpretation of the policy's liability limits provision applied, that demand may have exhausted coverage under the policy. The district court there expressly found that the insurer's settlement posture was such that settlement could not be achieved without resolving the question of the limits of liability coverage.

Here, as we have noted, there is no showing that the claims alleged in the complaint are for losses exceeding $3 million. We have the rehabilitator's and policyholders' writs of summons filed against those officers and directors, but, naturally, no indication from those writs of the nature of the causes of action.

We also have allegations that other creditors intended to make claims in excess of $15 million and an averment that a demand was made of Evanston, but no showing that the the demand was in satisfaction or settlement of a claim or claims. Absent an actual claim or complaint, we have no more than an indication that the insureds might be liable to that extent, such that Evanston might, in turn, be obligated to those insureds.

In actuality, all we have is a declaratory judgment complaint in which it is alleged that the rehabilitator has filed a writ, that certain policyholders have done the same, and that other creditors "intend" to assert claims against Mutual Fire's directors and officers in excess of the policy limits Evanston propounds. Unlike the situation in *Eureka*, the rehabilitator's declaratory judgment complaint avers not that there are specific underlying actions for which coverage or defense costs have been repudiated; rather, it makes only indefinite aver-

ments concerning the amounts and types of claims against the directors and officers.

We can, of course, deal only with the situation before us now. We do not intend by this opinion to foreclose all actions for declaratory judgment on the amount of insurance coverage until a final judgment is obtained; an action may be appropriate if, for instance, claims against insureds develop and the events giving rise to a declaratory judgment petition otherwise meet the requirements of definiteness found in *ACandS* and *Eureka.* We merely hold today that, under *these* circumstances, the dispute on which the rehabilitator bases this declaratory complaint is contingent and not of sufficient immediacy to constitute a case or controversy amenable to declaratory judgment. Therefore, we will sustain Evanston's demurrer and dismiss the complaint.

## EVANSTON'S MOTION TO STRIKE AND INVOLUNTARY PLAINTIFFS' PRELIMINARY OBJECTIONS

Because of our disposition, we need not consider the remaining grounds Evanston advances in support of its demurrer or its motion to strike certain paragraphs of the complaint. Nor need we consider the preliminary objections of the involuntary plaintiffs, who were joined to this complaint against their wishes, since we dismiss the complaint herein. We will therefore dismiss as moot the preliminary objections of the involuntary plaintiffs.

## ORDER

NOW, this 24th day of March, 1993, the defendant's preliminary objections in the above-captioned matter are sustained and the plaintiffs' complaint and action for declaratory judgment is hereby dismissed. The preliminary objections of Reilly, Kelly and Westerman to the joinder of them as involuntary plaintiffs to said complaint are hereby dismissed as moot.