

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-1998

# Apalucci v. Agora Syndicate

Precedential or Non-Precedential:

Docket 97-1190

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Apalucci v. Agora Syndicate" (1998). *1998 Decisions*. Paper 129.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/129

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 2, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1190

RONALD APALUCCI,

      Appellant

v.

AGORA SYNDICATE, INC.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No.: 96-cv-4552

Argued January 22, 1998

Before: SLOVITER, LEWIS,* and ROSENN, Circuit Judges.

(Opinion Filed June 2, 1998)

        Joseph F. McGowan, Jr. (Argued)
        1913 Greentree Road
        Cherry Hill, NJ 08003
        Counsel for Appellant

        William M. Connor
        Michael J. Smith (Argued)
        Billet & Connor
        2000 Market Street
        Suite 2803
        Philadelphia, PA 19103
        Counsel for Appellee

_____

* Although Judge Lewis took part in consideration of this case, he has
been unable to clear this written opinion because of illness.

OPINION OF THE COURT

ROSENN, Circuit Judge.

On this appeal, we are asked to decide a question offirst impression in Pennsylvania: whether an insurer's failure to defend under its liability insurance policy, which results in a default judgment being entered against its insured, entitles a third-party beneficiary of the policy to sue the insurer to collect the judgment when the policy only permits such suits after an "actual trial." In this case, plaintiff, Ronald Apalucci, obtained a default judgment against C.R. Management Enterprises, Inc. t/a Tijuana Yacht Club (the "Tijuana Yacht Club" or the "Club"). The Club's insurer, defendant, Agora Syndicate, Inc. ("Agora"), failed to defend the lawsuit. Apalucci then sought payment of the judgment from Agora as a third-party beneficiary under Agora's liquor liability insurance policy with the Tijuana Yacht Club. When Apalucci's efforts to collect failed, he sued Agora alleging bad faith and breach of contract in refusing to defend the Club and make payment to him. The district court granted Agora's motion for summary judgment. Apalucci timely appealed. We will vacate and remand.

I.

Because this appeal is from a grant of summary judgment, the following facts are viewed in a light most favorable to the appellant, Apalucci, with all doubts and reasonable inferences resolved in his favor. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). The underlying suit at issue here arises from the Tijuana Yacht Club's service of alcoholic beverages to Apalucci when he was only 19 years old and visibly intoxicated. After leaving the Club, he fell into a plate glass window and sustained serious injuries to his leg.

Apalucci then sued the Club in the United States District Court for the Eastern District of Pennsylvania alleging, among other things, that it was negligent in serving

2

alcoholic beverages to him in light of his minority age and visible intoxication. Shortly after the incident, however, the Club ceased to do business and its principal, Cam Rowell, could not be found. Thus, unable to personally serve Rowell, Apalucci eventually effectuated substitute service by mail. When the Club took no action in response to Apalucci's complaint, the court entered a default judgment against it for $75,000.

At the time of Apalucci's injury, the Tijuana Yacht Club carried a liquor liability insurance policy issued by Agora. Apalucci attempted to collect his judgment by making a demand against Agora for payment of the $75,000 default judgment in accordance with the terms of the policy. As a condition of coverage, however, the policy required the Club's owner to notify it, and cooperate and assist in the investigation and defense, of any claims. Furthermore, the policy permitted suit against Agora only on a final judgment obtained after an "actual trial." Although Rowell notified Agora of Apalucci's claim, Agora alleges that it was unable to locate Rowell. Accordingly, Agora denied coverage due to Rowell's failure to cooperate and assist in the defense of Apalucci's claims as required by the terms of the insurance contract. Apalucci contests this allegation, arguing that the insured cooperated in the investigation of the claim and that Agora even undertook an initial investigation into the facts surrounding the incident.

In his complaint, Apalucci raised two claims. First, he alleged that Agora acted in bad faith in the execution of its duty to provide coverage and defense to the Club. Second, he alleged that Agora's failure to pay the $75,000 judgment constituted "a breach of contractual duties owed to [him] as a third party beneficiary of the coverage purchased by [the Tijuana Yacht Club]."

Agora denied any obligation to Apalucci and moved for summary judgment. In its motion, Agora asserted as its primary defense Apalucci's lack of standing to sue for bad faith, and secondarily, the Club's failure to cooperate in the underlying negligence action. These defenses, it forcefully argued, relieved it of any duties it may have had to the Club or Apalucci. Persuaded, the district court granted

3

summary judgment in favor of Agora. After the court denied Apalucci's motion for reconsideration, he timely appealed.[1]

II.

Although the parties discuss at length their differing versions of the facts, and their respective views as to the court's grant of summary judgment, the dispositive issues raised concern the right to sue under the insurance contract and the contract's "no action clause." These related issues are solely legal over which our review is plenary. See Travitz v. Northeast Dep't ILGWU Health and Welfare Fund, 13 F.3d 704, 708 (3d Cir. 1994); McMillan v. State Mutual Life Assurance Co. of America, 922 F.2d 1073, 1074 (3d Cir. 1990). Specifically, we must predict whether the Pennsylvania Supreme Court would hold that Agora's failure to defend the Club against Apalucci's suit, resulting in a default judgment against it, entitles Apalucci, as third-party beneficiary under the liability insurance policy, to sue Agora to collect on the judgment when the policy only permits such suit after an "actual trial."

It is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create such a right. See, e.g., Dercoli v. Pennsylvania Nat'l Mut. Ins. Co., 535 A.2d 163, 165 (Pa. Super. Ct. 1987), rev'd on other grounds, 554 A.2d 906 (Pa. 1989); Folmar v. Shaffer, 332 A.2d 821, 823 (Pa. Super. Ct. 1974); Philadelphia Forrest Hills Corp. v. Bituminous Cas. Corp., 222 A.2d 493, 494 (Pa. Super. Ct. 1966). Apalucci, however, argues that the district court ignored the very clear terms of Agora's insurance policy which contains an express provision obligating it to pay the judgment he obtained against its insured, thus breaching its contractual

_____

1. The district court exercised diversity jurisdiction pursuant to 28 U.S.C. S 1332, as the parties are citizens of different states and the amount in controversy exceeded the then-applicable amount of $50,000. This Court has appellate jurisdiction of the district court's final order pursuant to 28 U.S.C. S 1291.

It is undisputed that Pennsylvania law applies. The district court applied Pennsylvania law, as do we.

4

obligation to him as a third-party beneficiary.[2] As Apalucci correctly notes, the district court did not determine the meaning of, or even mention, this provision.

The specific provision on which Apalucci focuses is commonly referred to as a "No Action Clause." It reads in relevant part as follows:

> No person or organization has a right . . . :
>
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
>
> b. To sue us . . . unless all . . . terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial . . ..

(emphasis added). Thus, under this provision, an insured must meet two conditions precedent to have a direct right of action against the insurer. First, the insured must have fully complied with all terms of the policy, including the previously mentioned notice and cooperation provisions. We express no opinion as to whether this condition was met as the district court did not address the issue and decided the case on other grounds. This issue will need to be resolved on remand. Construing the evidence in the light most favorable to Apalucci, we will assume solely for purposes of this discussion that the condition has been met.

Second, Apalucci must have obtained a final judgment in his favor against the Club after an "actual trial." Agora

_____

2. Apalucci also argues for the first time here on appeal that Pa. Stat. Ann. tit. 40, S 117 provides him with a statutory right to proceed against Agora. Under this provision, "the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy." As a general rule, however, " `[t]his [C]ourt has consistently held
that it will not consider issues that are raised for the first time on appeal.' " Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 443 (3d Cir. 1997) (quoting Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994)), cert. denied, 118 S. Ct. 1385 (1998). Accordingly, we decline to address the merits of this argument.

5

contends that because Apalucci obtained only a default judgment against its insured and thus an actual trial was never held, Apalucci has no standing to sue it under the express terms of this provision. We disagree. We conclude that in the context of this case, the Pennsylvania Supreme Court would hold that other factors outweigh the policy's actual trial requirement and entitle Apalucci to sue Agora.

The Pennsylvania Supreme Court and this Circuit sitting in diversity have not had the occasion to interpret a "no action clause" in the context of a direct action by a third-party who secured a default judgment against an insured due to the insurer's alleged failure to defend. Several Pennsylvania cases, however, do provide support for the result we reach today. First, in Foster v. Mutual Fire, Marine and Inland Ins. Co., 623 A.2d 928 (Pa. Commw. Ct. 1993), aff 'd, 636 A.2d 627 (Pa. 1994), the court, in discussing an almost identical no action clause, explained the clause's purposes as follows:

> [N]o action clauses are intended to prevent (1) actions against the insurer for a money judgment by the injured party until damages have been fixed by final judgment or agreed settlement; (2) nuisance suits against the insurance company; and (3) an injured party or an insured from bringing the insurance company into the underlying litigation with possible resultant prejudice.

Id. at 930 (citations omitted). None of these purposes is offended by permitting Apalucci's suit against Agora after obtaining a default judgment. The fact and the amount of the insured's liability have been conclusively established by an enforceable court judgment. Moreover, Apalucci's suit is not a nuisance suit. Thus, when the clause is distilled, its essence is not the nature of the trial but whether the insured suffered a bona fide and fixed money judgment.

Brakeman v. Potomac Ins. Co., 371 A.2d 193 (Pa. 1977), provides further support for our analysis of the no action clause and the legal significance of the term"actual trial" contained therein. In Brakeman, an insurer defended against a suit brought by a party injured in an accident involving its insured. The action sought payment of a

6

settlement agreement entered into by the injured party and its insured, on the grounds that the insured breached a term of the contract. The late, learned Justice Roberts, citing a long line of cases, noted that (as allegedly happened here), "[w]here an insurance carrier breaches its insurance contract by unjustifiably refusing to defend its insured, it cannot assert as a defense to an action by the insured or the injured party that the insured did not comply with the `actual trial' provisions of the insurance contract." Id. at 200–201 (Roberts, J., concurring and dissenting) (citations omitted). He went on to explain that, "[t]he insurance company's initial repudiation of the contract in denying liability under the policy relieve[s] the insured of strict performance of those provisions intended for the protection of the insurer [if the insurer is in fact obligated to defend the insured]." Id. at 201 (quoting Murphy & Co. v. Manufacturers' Cas. Co., 89 Pa. Super. 281, 286 (Pa. Super. Ct. 1926)); see also Roberts v. Fireman's Ins. Co. of Newark, N.J., 101 A.2d 747 (Pa. 1954) (quoting Murphy & Co. with approval). This language demonstrates that the applicability of the "actual trial" provision is dependent upon the insurer defending its insured in good faith. This is precisely what Apalucci argues Agora did not do.

Accordingly, because the insurer's refusal to defend " `cut at the very root of the mutual obligation, [it] put an end to its right to demand further compliance with the . . . term of the contract.' " Id. (quoting St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 201 U.S. 173, 181 (1906)). Thus, we predict that if confronted with this question, the Pennsylvania Supreme Court would conclude that if Agora's refusal to defend its insured amounted to a breach of the insurance contract and resulted in the default judgment obtained by Apalucci, Agora thereby forfeited its right to enforce the actual trial requirement. Therefore, we hold that the Pennsylvania Supreme Court would not preclude Apalucci from suing Agora for breach of contract pursuant to the policy's no action clause, despite the absence of an actual trial.3

_____

3. Apalucci has not raised the issue of whether Agora's failure to defend constitutes a waiver and/or estoppel, and we, therefore, do not discuss it.

7

Finally, the result we reach comports with elementary principles of fairness and equity. As a general rule, when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure. See, e.g., St. Louis Dressed Beef & Provision Co., 201 U.S. at 181; Borough of Nanty-Glo v. American Sur. Co. of N.Y., 175 A. 536, 537 (Pa. 1934). Here, it strikes us as patently unfair to allow Agora to unilaterally (and potentially unjustifiably) sit by while a default judgment is entered against its insured, and then take advantage of that same self-induced default as the cornerstone on which to reject a claim under the insurance contract between them. See Tudesco v. Wilson, 60 A.2d 388, 391 (Pa. Super. Ct. 1948).

III.

In summary, we believe that the Pennsylvania Supreme Court would hold that an insurance company's failure to defend its insured, which results in the entry of a default judgment against the insured, entitles a third-party beneficiary of a liability insurance policy to directly sue the insurer to collect and enforce the default judgment, notwithstanding that the policy only permits a third-party suit to collect if a judgment is obtained in an "actual trial." We remind the parties, however, that we express no opinion as to the factual merits of this case. We leave the factual issues, such as the insured's alleged cooperation with Agora, for resolution on remand in the district court.

Accordingly, the district court's grant of summary judgment will be reversed and the case remanded to the district court for further proceedings consistent with this opinion. Costs taxed against the appellee.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

8